## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

GARRY B.,[1]           )
                          )
      Plaintiff,      )
                          )    No. 22 C 50346
v.                     )
                          )    Magistrate Judge Laura K. McNally
MARTIN O'MALLEY,     )
Commissioner of Social Security,[2]   )
                          )
      Defendant.     )

## <u>ORDER</u>[3]

Before the Court is Plaintiff Garry B.'s memorandum in support of summary judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision denying his applications for disability benefits (D.E. 14: Pl. Mem. in Support of Summ, J., "Pl. Mem.") and Defendant's response in support of summary judgment (D.E. 20: Def. Mot. for Summ. J., "Resp.").

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Martin O'Malley for his predecessor, Kilolo Kijakazi, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On August 30, 2023, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (D.E. 24.)

## I.     Procedural History

Plaintiff applied for disability insurance benefits on August 27, 2020, alleging disability beginning September 15, 2016. (R. 16.) He last worked in 2015 and his date last insured was December 31, 2020. (*Id.*) The ALJ held a hearing on December 8, 2021, and on January 28, 2022 the ALJ issued a written decision denying Plaintiff's application, finding him not disabled under the Social Security Act (the "Act").[4] This appeal followed. For the reasons discussed herein, Plaintiff's motion is denied and the Commissioner's motion is granted.

## II.    The ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date (R. 15-16.) At Step Two, the ALJ determined that Plaintiff had the following medically determinable impairments: major depressive disorder; post-traumatic stress disorder (PTSD); an adjustment disorder; obstructive sleep apnea; diabetes mellitus; obesity; gastroesophageal reflux disease (GERD); psoriasis; and hyperlipidemia with an elevated heart rate, but that none of these impairments were severe because they did

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

significantly limit his ability to perform basic work-related activities for 12 consecutive months. (R. 16.)[5] Because Plaintiff had medically determinable mental impairments, the ALJ undertook an analysis of the Paragraph B factors set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1), determining that Plaintiff had mild limitations in all four functional areas. (R. 21-22.)

Because the ALJ found that Plaintiff did not have a severe impairment at Step Two, her inquiry ended and she determined that Plaintiff was not disabled from his alleged onset date through his date last insured.

III.    **Legal Standard**

Under the Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the

---

[5] The ALJ also found that Plaintiff had the nonmedically determinable impairments of mild degenerative changes in his spine, joint pain, a history of traumatic brain injury, and injuries of the elbow, knee, and ankle. (R. 16.)

regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4). An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022) An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford

4

the appellant meaningful judicial review." *Id*. at 1054. The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

## IV.     Analysis

Plaintiff argues that the ALJ erred (1) by finding no severe impairments, and (2) by therefore failing to consider residual functional capacity restrictions necessary to accommodate Plaintiff's limitations. Having considered the record and the parties' briefs, the Court finds no error in the ALJ's decision and therefore affirms.

### A.     Step Two Legal Standard

At Step Two of the disability evaluation process, where an ALJ determines whether a claimant's medically determinable impairments, individually or in combination, are "severe," it is the claimant's burden to prove his impairments meet the

5

severity threshold. *See generally Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); 20

C.F.R. § 404.1521. The regulations implementing the Act explain that that "[t]he severity

requirement cannot be satisfied when medical evidence shows that the person has the

ability to perform basic work activities, as required in most jobs. Examples of these are

walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;

seeing, hearing, and speaking; understanding, carrying out, and remembering simple

instructions; use of judgment, responding appropriately to supervision, coworkers, and

usual work situations; and dealing with changes in a routine work setting." SSR-85-28;

20 C.F.R. § 404.1522(b). In addition to the requirement that they be "severe," the

impairment or impairments must have lasted, or be expected to last, for a continuous

period of at least 12 months, or they must be expected to result in death. *See* 20 C.F.R. §§

404.1509; 404.1520(a)(4)(ii).

Although Step Two has been described as "a *de minimis* screening for groundless

claims intended to exclude slight abnormalities that only minimally impact a claimant's

basic activities" *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (citation

and internal quotations omitted), a plaintiff who challenges an ALJ's Step Two

finding(s) nonetheless must do more than offer conclusory assertions; he must provide

record citations and explain how they prove his alleged limitations. *Wolms v. Barnhart*,

71 F. App'x 579, 581 (7th Cir. 2003).

This case represents the relatively rare situation where the ALJ's inquiry ended at Step Two because she found Plaintiff had no severe impairments that met the regulatory definition. Specifically, the ALJ determined that none of Plaintiff's impairments significantly limited his physical or mental ability to do basic work activities, and moreover, that a number of them had not lasted or were expected to last for 12 consecutive months and therefore were not severe. (R. 17.) Plaintiff argues that the ALJ erred on both counts, by wrongly determining that some of his impairments did not meet the 12-month durational requirement and also by ignoring evidence that Plaintiff's impairments actually were severe.

**B.    The ALJ's Step Two Severity Finding Was Not Erroneous.**

Here, because Plaintiff challenges the ALJ's finding that his depression, anxiety, PTSD, psoriasis, diabetes, and obesity were non-severe, he must point to records demonstrating severe limitations, stemming from one or more of these impairments, that had lasted (or could be expected to last) at least 12 months. The relevant inquiry is not whether Plaintiff had a particular medically determinable impairment for 12 months, but whether the impairment(s) caused him to be unable to engage in substantial gainful activity for that amount of time. SSR 23-1p. As described below, while the Court agrees some of Plaintiff's medically determinable may have lasted longer than 12 months, he did not meet his burden of proving that any of them were severe or could be expected to be severe for that long. (R 13.) After reviewing the ALJ's

careful and thorough consideration of the evidence, the Court agrees that her Step Two determination was supported by substantial evidence.[6]

### 1. Mental Health Impairments

The ALJ supported with substantial evidence her determination that Plaintiff's PTSD, major depressive disorder, and anxiety were not severe because none of them caused significant limitations in his ability to perform work-related tasks for long enough to meet the 12-month durational requirement or could be expected to do so. In doing so, the ALJ first acknowledged that the record reflected diagnoses of these mental health conditions, and discussed Plaintiff's subjective symptoms, noting Plaintiff's hearing testimony that he has flashbacks when dealing with loud noises, that he sleeps in front of the door because of fears someone will break into his house, and that he refuses to take medication because as the sole provider for his two children he did not want to reduce his cognitive capabilities. (R. 19.)

The Court notes that although the ALJ acknowledges that Plaintiff was previously diagnosed with major depressive disorder and PTSD, there is no evidence in the record of Plaintiff receiving mental health treatment between 2008 and September 2020. Indeed, Plaintiff states in his opening brief that he was diagnosed with PTSD in 2020 (Pl. Mem. at 3) but argues that the ALJ should have nonetheless found that his PTSD met the 12-month durational

---

[6] Plaintiff does not argue that the ALJ erred in concluding that his sleep apnea, gastroesophageal reflux disease, hyperlipidemia with an elevated heart rate, or various joint aches were not severe and thus the Court does not address them.

requirement for a severe impairment "even if records reflecting treatment back to 2008 are absent from the transcript." (Reply at 6.) But while an ALJ may consider evidence that pre-dates a claimant's alleged onset date, it is the claimant's duty to provide the ALJ with all evidence that supports his claim for disability. 20 C.F.R. § 404.1512, 1514. In this case, absent any such evidence before the ALJ, the unsubstantiated fact that Plaintiff had some treatment for PTSD in 2008—six years before his alleged onset date and 12 years before he filed his application for benefits—does not establish that Plaintiff's PTSD was a severe impairment in 2020, that it significantly limited his ability to perform basic work tasks, or that it had lasted or was expected to last for 12 months.

Importantly, the ALJ discussed all of the record evidence concerning Plaintiff's mental health and did not leave anything out, explaining that there "is no indication that the claimant had any significant limitations regarding his mental health for a long enough duration to meet the durational requirements of a severe impairment." (R. 19.) Specifically, the ALJ considered the following objective and subjective evidence of Plaintiff's mental health impairments before determining that they were not severe:

- A September 2020 medical examination in which Plaintiff reported symptoms of anxiety and depression but also had a normal mental status examination and declined mental health treatment (*Id.*);

- Plaintiff's first specialized mental health treatment (a therapy session) in November 2020, in which he reported anxiety before bed that caused difficulty sleeping, occasional nightmares, avoidance of large crowds, hypervigilance, and exaggerated startle response with his PTSD. However the ALJ noted that Plaintiff testified that his crowd avoidance was "not debilitating" and he remained capable of getting things done (*Id.*);

- Plaintiff's administration of the PHQ-9 depression questionnaire and the GAD-7 anxiety questionnaire in November 2020, which revealed results consistent with moderate depression and anxiety, both of which seemed adjustment related and due to the pandemic; the ALJ additionally noted that the assessments stated that the findings were based on Plaintiff's self-reports and not sufficient for diagnosis (*Id.*);

- Mental status examinations also performed in November 2020 that noted "a happy mood with a euthymic affect, normal speech, coherent and appropriate thought processes/content, a cooperative attitude, and good insight and judgment" (*Id.*); and,

- Plaintiff's second mental health treatment in December 2020, during which Plaintiff indicated that much of his depression and anxiety symptoms were related to his fear of COVID-19. Plaintiff's mental health examination was again essentially normal, albeit with an anxious mood. (*Id.*).

The ALJ also concluded that Plaintiff's mental limitations were not severe because he had no more than mild limitations in all four of the Paragraph B functional criteria for mental impairments. (R. 21.) Over the course of five detailed paragraphs, the ALJ pointed to substantial evidence supporting her determination, including a third-party function report Plaintiff's father completed which reflected that Plaintiff had no trouble remembering or applying information or following directions, examinations that determined Plaintiff demonstrated good judgment and insight, his ability to hold conversations and pay attention during his medical evaluations, his ability to independently care for his two small children, his ability to give a detailed and complete medical history at the hearing, and appropriate hygiene and grooming. (R. 22.)

In making her determination that Plaintiff had no more than mild limitations in any of the Paragraph B areas, the ALJ acknowledged Plaintiff's contrary testimony that he had difficulty sleeping due to anxiety and that a lack of sleep affected his concentration, that he testified to having few in-person friends but that he maintains relationships online, and that he had problems with crowds which were not debilitating. (*Id.*) The ALJ further acknowledged Plaintiff's testimony that his social activities had decreased, which appeared to be partially in response to the pandemic and partially due to self-consciousness about his psoriasis. (*Id.*)

The ALJ also discussed the only medical opinions in the record, two January 2021 determinations from non-examining state agency psychological consultants. Alvin Smith, Ph.D., reviewed the medical record and assessed Plaintiff's depression and anxiety as both severe, and Larry Kravitz, Psy.D., affirmed the opinion. (R. 81, 86, 96-102.) Together, the state agency doctors opined that Plaintiff's abilities to understand, remember, or apply information and adapt or manage himself were mildly impaired and his abilities to interact with others and concentrate, persist, and maintain pace were moderately impaired. (*Id.*)[7]

---

[7]The state agency doctors ultimately found Plaintiff was not disabled because he retained a residual functional capacity to perform work despite his impairments, assessing him as having a mental residual functional capacity to "understand, remember, and carry out detailed instructions; sustain attention/concentration for extended periods with normal breaks; exercise reasonable judgment; and interact with others on a superficial level in a routine work setting. (R. 86-87.)

11

In determining the opinion's persuasiveness, the ALJ was required to evaluate them "based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022). *See also* 20 C.F.R. § 416.920c(c)(1)-(5). An ALJ must explain how she considered the first two factors (supportability and consistency) and may but is not required to explain her consideration of the other factors. 20 C.F.R. § 416.920c(b)(2).

The ALJ explained that she did not find these opinions on severity persuasive because they were not consistent with Plaintiff's lack of specialized treatment prior to his date last insured, with his generally normal mental health examinations, and with his refusal to treat his conditions with medications. (R. 23.) She also pointed out that the opinions were inconsistent with the length of time Plaintiff had had his mental health conditions and been treated for them. (*Id.*) The ALJ again noted that the record evidence showed that Plaintiff's mental health conditions did not satisfy the durational requirements for finding severe impairments. (*Id.*) And while the ALJ did not specifically use the word "supportability" in her evaluation, the Court finds its absence harmless; the ALJ plainly considered the fact that little or no other evidence in the

record supported the opinions' determination regarding severity, particularly with respect to the durational requirement.

All of the above constitutes substantial evidence to support the ALJ's finding that Plaintiff's mental health impairments were not severe. The ALJ's careful discussion and weighing of all subjective and objective evidence supports her findings that Plaintiff's mental health impairments neither significantly impaired his ability to perform basic work activities nor had lasted or would be expected to last for 12 months.

Plaintiff takes issue with this determination in part by contending that while the ALJ acknowledged the evidence of Plaintiff's mental health impairments, she improperly rejected it because it was based on Plaintiff's subjective symptoms, and also because the majority of Plaintiff's mental status examinations were normal. (Pl. Mem. at 6-7.) Neither of these arguments have merit.

As required by SSA regulations, the ALJ considered Plaintiff's statements about the severity of his symptoms and explained why they were inconsistent with the medical evidence. 20 CFR 404.1529 and SSR 16-3p. She acknowledged his worries about COVID-19, difficulties with obtaining childcare, and reasons for refusing to take various medications,[8] and she observed there was no evidence Plaintiff structured his activities

---

[8] Plaintiff is simply incorrect when he states that the ALJ did not consider the reasons for his noncompliance with medical treatment before relying on it as evidence; in fact that ALJ directly addressed Plaintiff's refusal to take medications for his mental health because he worried they would affect his cognitive function, the fact that he refused diabetes medication because he

to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors. (R. 21.) The ALJ also noted that there was no evidence that Plaintiff was unable to afford treatment and that the overall limited evidence showed generally benign findings and a refusal to engage in recommended treatment. (R. 21.)

In conducting her subjective symptom analysis, the ALJ pointed to a particularly telling treatment note from November 2020. That note that recorded Plaintiff as having a happy mood, normal speech, coherent and appropriate thought processes, a cooperative attitude, and good insight and judgment. (R. 19.) "[C]omments from mental health providers that a plaintiff is 'doing well' or her mental status is norma' or that she is 'very happy' do not tend to translate into a finding that the Plaintiff is incapable of work." *Elizabeth G. v. Kijakazi*, No. 20 C 1799, 2022 WL 326966 at *1 (N.D. Ill. February 3, 2022).

A court will uphold an ALJ's subjective symptom analysis unless it is patently wrong. *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). In this case, the Court finds that the ALJ's weighing of Plaintiff's subjective symptoms against the other evidence in the record was not patently wrong and thus it is not a basis for remand.

Next, Plaintiff argues that the ALJ erred in finding that his mental health impairments would not be expected to last for at least 12 months because "while the claimant must establish disability prior to the [date Plaintiff was last insured ("DLI")]

---

preferred to manage his symptoms with diet, and that there is no evidence in the record that Plaintiff refused treatment because of financial difficulties.

post-DLI evidence can relate back and establish disability prior to the DLI," citing *Halvorsen v. Heckler*, 743 F.2d 1221, 1225-26 (7th Cir. 1984). Although Plaintiff's recitation of this legal standard is correct, he fails to confront the fact the medical record contains no evidence of treatment for his mental health impairments beyond his date last insured.[9]

To the extent Plaintiff argues that his own hearing testimony supplies the necessary evidence that his conditions continued past his date last insured, that argument is unavailing. At the hearing, the ALJ specifically asked Plaintiff if he "kept up with other mental health care or was it just those to (sic) visits during that struggling time?" (R. 54.) Plaintiff responded that he tried to do as much as he could on his own, clarifying further that "[f]or me to reach out like I did for the VA back in the middle of that crisis, it was really a terrible – they certainly assisted me through a very, very difficult time there with my compromised immune system and my two children, I was afraid of stepping foot out of the house, you know, and coming down with a deadly virus and leaving my children orphaned." (*Id.*) And when the ALJ followed up and asked if "that is subsided to a certain extent now with [COVID] vaccinations and all of that," Plaintiff responded, "[Y]es. I was, I was fully vaccinated, yes." (R. 55.)

---

[9] At the hearing, the ALJ noted that she was keeping the record open because Plaintiff had submitted a "five day letter" indicating he had requested additional records from 2021, and further told Plaintiff she would consider any additional records he got from the VA after the close of the hearing. (R. 33, 34.) Plaintiff did not submit any additional records.

Therefore, the Court finds that the ALJ's determination that his mental health impairments were not severe is supported by substantial evidence. Not only did the ALJ properly explain why they did not significantly limit his ability to do basic work activities, she further demonstrated that none of them had not lasted or were expected to last for 12 months.

In making its finding, the Court acknowledges the seminal case concerning a Step Two finding of severity of mental health impairments, *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016). In that case, the Appeals Court overturned an ALJ's finding that a claimant's diagnosis of "major depression, severe recurrent" was not severe, explaining that it was "not supported by substantial evidence and, indeed, strikes us as nonsensical given that the diagnosis, by definition, reflects a practitioner's assessment that the patient suffers from 'clinically significant distress or impairment in social, occupational, or other important areas of functioning.'" *Id*. (internal citations omitted.) Notably, while the *O'Connor-Spinner* court noted that it had not found a published opinion in which an ALJ declared that major depression was not a severe impairment, it stopped short of finding that such a diagnosis is *per se* severe.[10]

---

[10] Since *O'Connor-Spinner* was decided, several courts have upheld a Step Two finding of non-severity for various mental health impairments. For example, in *Rutledge v. Saul*, 524 F. Supp. 3d 869, 872 (N.D. Ind. 2021), the court upheld the ALJ's determination that a plaintiff's bipolar disorder, anxiety disorder, autism/Asperger's disorder, attention deficit hyperactivity disorder, and Tourette's syndrome were not severe, noting that the ALJ considered "the entire (although relatively scant) medical record," including that Plaintiff's period of severe symptoms resolved

*O'Connor-Spinner* is distinguishable. In that case, which was remanded twice for errors concerning the assessment of the plaintiff's mental health, the medical record reflected that the plaintiff had a long history of treatment for ongoing depression. Notably, the record reflected more than 12 years of examination and progress notes assessing the plaintiff as depressed, her treatment with several prescription antidepressant medications, a history of suicide attempts, serious difficulty managing anger, and reports of crying spells and memory blackouts. 832 F.3d at 691-92. After the Seventh Circuit remanded the case for the first time, the plaintiff supplemented the record with additional evidence reflecting that she sought out more mental health treatment for depression and anxiety, at which time she was diagnosed with "major depression, recurrent severe." *Id.* at 693. Moreover, the only evidence in favor of the "not severe" finding was the opinions of two non-examining state agency psychologists, and the record was "replete with examples of cherry-picking" that ignored significant evidence of the plaintiff's depression. *Id.*

_____

in less than 12 months before determining that it did not establish "an ongoing and severe impairment, that imposed significant limitations of function, for twelve months in duration." *Id.* at 874. And in *Bridget T. M. v. O'Malley*, No. 21-CV-50290, 2024 WL 4347193, at *2 (N.D. Ill. Sept. 30, 2024), which the Court acknowledges is unpublished, a court in this district agreed that the ALJ supported with substantial evidence his determination that the plaintiff's depression, and anxiety were not severe after discussing the plaintiff's mental health limitations throughout the decision, chronologically reviewing her medical records, and acknowledging her subjective symptoms, including memory issues, problems with crowds, and anxiety.

In contrast, Plaintiff here identifies no evidence—either subjective or objective—that the ALJ ignored or overlooked. Although the record reflects that Plaintiff reported symptoms of depression, anxiety, and PTSD between September and December 2020, formal diagnoses and treatment were scant, and there was certainly no indication that Plaintiff's depression was "recurrent." Indeed, Plaintiff acknowledged that he did not need or seek treatment after his date last insured, lending more support to the ALJ's finding that he did not meet the durational requirement for finding a severe impairment. (R. 54-55.)

The ALJ here thus supported with substantial evidence her determination that this is the rare circumstance where Plaintiff's diagnosis of depression does not demonstrate the severity level required at Step Two. To the extent Plaintiff argues that the ALJ should have credited his testimony about his subjective symptoms otherwise, that is a request to reweigh the evidence, which the Court will not do.

### 2.    Psoriasis

In determining that Plaintff's psoriasis was not a severe impairment, the ALJ explained that there is little evidence of treatment from Plaintiff's diagnosis in 2017 until late 2020. (R. 20.) For most of that time, Plaintiff reported he had been doing well on medication until he stopped taking it between February and May of 2020 due to his concerns about COVID-19. (R. 20.) The ALJ acknowledged that restarting prescription medication did not control Plaintiff's symptoms as well as it had previously. She further

recognized that Plaintiff endorsed psychosocial distress and decreased quality of life secondary to his facial plaques associated with his psoriasis. (*Id.*) Nevertheless, the ALJ found that although Plaintiff's psoriasis caused some symptoms, they were generally well controlled with medication, that flares seemed to occur only when Plaintiff stopped his medication, and that the ALJ could identify no work-related limitations due to psoriasis. (R.20.)

While Plaintiff does not argue that his psoriasis itself limits his ability to work, he suggests that it was nonetheless severe because it caused low self-esteem and made him avoid going out in public due to embarrassment. (Pl. Mem. at 10.) The Court is certainly sympathetic to Plaintiff's emotional discomfort, but Plaintiff's self-described embarrassment does not establish that he was significantly limited in his ability to perform any work-related task, and he suggests none. An impairment is found not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28. That is the case here, and therefore, the ALJ's consideration of Plaintiff's psoriasis and determination that it was also not a severe impairment is supported by substantial evidence.

### 3. Obesity/Diabetes

The ALJ also supported with substantial evidence her findings that Plaintiff's obesity and diabetes were not severe. With respect to Plaintiff's obesity, the ALJ

acknowledged that he had been diagnosed with mild obesity, but despite this diagnosis, Plaintiff's records from September 2020 indicate that he refused referral to a weight loss program. (R. 545.) As for Plaintiff's diabetes, the ALJ noted that his A1C levels were elevated in October 2020, but that he did not want to take medication at the time. (R. 20.) Instead, explained the ALJ, Plaintiff preferred to try to manage his symptoms with changes in his diet; moreover, records from December 2020 indicated that Plaintiff had been prescribed Metformin but had been noncompliant with it. (R. 20.) The ALJ acknowledged Plaintiff's testimony at the hearing that he was now taking the medication Metformin but not insulin, and that his diabetes caused extra bathroom visits of about twice per hour. (*Id.*) In finding that Plaintiff's diabetes and obesity were not severe, the ALJ pointed to Plaintiff's noncompliance with treatment as well as the lack of a 12-month durational requirement. (*Id.*)

Plaintiff argues that the ALJ erred in finding his diabetes was not expected to last for 12 months because he testified he was still taking Metformin at the time of the hearing. (Pl. Mem. at 7.) But that fact only established that Plaintiff's medically determinable impairment lasted past his date last insured, not that it was severe. There is no medical evidence that his diabetes caused any work-related limitations.

Plaintiff contends that his diabetes-based need for frequent bathroom breaks establishes such a work-related limitation. The ALJ acknowledged Plaintiff's testimony about his bathroom usage, and even elicited additional testimony from him that the

20

need for unregulated bathroom visits was one of his biggest concerns about trying to work. (R. 18.) But even with Plaintiff's alleged need for additional bathroom breaks—for which there was no evidence until a year after Plaintiff's last date insured—the ALJ determined that Plaintiff's noncompliance with treatment and failure to meet the 12-month durational requirement defeated his claim regarding diabetes severity. (R. 20.) The Court finds no error with the ALJ's conclusion.

**C.**   **The ALJ Was Not Required to Determine Plaintiff's Residual Functional Capacity.**

Plaintiff argues that the ALJ erred by not assessing residual functional capacity. (Pl. Mem. at 12.) Once the ALJ concluded that plaintiff's claim filed at Step Two, however, there was no need for her to assess Plaintiff's residual functional capacity. No further analysis was required, and she did not err in stopping in her inquiry where she did.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for summary judgment seeking to reverse and remand the ALJ's decision (D.E. 14) and grants Defendant's motion for summary judgment. (D.E. 20).

**SO ORDERED.**

**ENTER:**

**LAURA K. MCNALLY**

**United States Magistrate Judge**

**DATED: December 2, 2024**